# EXHIBIT B

## IN THE CIRCUIT COURT FOR THE FOURTH JUDICIAL CIRCUIT
## MONTGOMERY COUNTY, ILLINOIS

| | | |
|---|---|---|
| **BRET BRAY, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **2019L8** |
| | ) | **Case No.** |
| **v.** | ) ) | |
| **LATHEM TIME CO.,** | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) ) ) | |

### CLASS ACTION COMPLAINT

Plaintiff Bret Bray ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated (the "Class"), bring the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Lathem Time Co. ("Lathem" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Lathem is a leading provider of human resource management software and services that's best known for helping hundreds of thousands of businesses track employee time and process payroll.

2.     To help make employee time and attendance tracking more accurate, Lathem encourages its customers to use biometric-based time clocks, which use an employee's biometrics to punch in and out of work, instead of key fobs, identification numbers, or cards.

3.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – facial biometrics are unique, permanent biometric identifiers associated with each employee. This exposes employees who are required to use Lathem devices as a condition of their employment to serious and irreversible privacy risks. For example, if a database containing facial biometric data or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Google, Equifax, Uber, Home Depot, Panera, Whole Foods, Chipotle, Trump Hotels, Facebook/Cambridge Analytica, and Marriott data breaches or misuses – employees have _**no**_ means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

4.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

5.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-indiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

2

6.  In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-accessto-billion-aadhaar-details/523361.html.

7.  Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as facial biometrics.

8.  Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards the statutorily protected privacy rights of Illinois citizens and unlawfully collects, stores, disseminates, and uses their biometric data in violation of BIPA. Specifically, Defendant violated and continues to violate BIPA because it did not and continues not to:

   a.  Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their facial geometry scans were being collected, stored, and used, as required by BIPA;

   b.  Receive a written release from Plaintiff and others similarly situated to collect, store, or otherwise use his facial geometry scans , as required by BIPA.

   c.  Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' facial geometry scans , as required by BIPA; and

   d.  Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their facial geometry scans to a third party as required by BIPA.

9.  Accordingly, this Complaint seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiff and the proposed class.

## PARTIES

10.    Plaintiff Bret Bray is a natural person and a citizen in the State of Illinois.

11.    Defendant Lathem is a corporation organized and existing under the laws of the State of Georgia. Lathem conducts business in Illinois, including in Montgomery County.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because it conducts business transactions in Illinois and committed statutory violations and tortious acts in Illinois.

13.    Venue is proper in Montgomery County because Defendant conducts business in this State, Defendant conducts business transactions in Montgomery County, and Defendant committed the statutory violations alleged herein in Montgomery County and throughout Illinois.

## FACTUAL BACKGROUND

### I.    The Biometric Information Privacy Act.

14.    Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including facial-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS 14/5.

15.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could

4

now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

16. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

17. Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

18. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things: collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    1) Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    2) Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    3) Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

19.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

20.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand geometry and fingerprints, and – most importantly here – facial geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

21.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

22.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

23.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk

for identity theft and left without any recourse. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

24.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

25.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendant Violates the Biometric Information Privacy Act.

26.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using employees' biometric data as an authentication method stopped doing so.

27.     However, Defendant failed to take note of the shift in Illinois law governing the collection and use of biometric data. As a result, Defendant continues to collect, store, use, and disseminate Illinois employees' biometric data in violation of BIPA.

28.     Specifically, when an employee first begins work at a company that uses one of Lathem's biometric devices, they are required to have their facial geometry scanned in order to enroll them in the Lathem database.

29.     In those instances, Lathem similarly fails to inform the employees that Lathem is collecting, storing, or using their sensitive biometric data, the extent of the purposes for which it collects their sensitive biometric data, or to whom the data is disclosed, if it all.

30.     Upon information and belief, Defendant failed and continues to fail to provide employees with a written, publicly-available policy identifying its retention schedule and guidelines for permanently destroying employees' biometric data when the initial purpose for collecting or obtaining their biometrics is no longer relevant, as required by BIPA.

31.     Upon information and belief, Defendant failed and continues to fail to inform employees that it discloses their facial geometry data to other, currently unknown, third parties, which host the biometric data in their data centers; fails to inform its employees of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from employees before collecting their facial geometry data

32.     In addition, Lathem profits from the use of employees' biometric data. For instance, Lathem markets its biometric time clocks to employers as superior options to traditional time clocks, which can be used in a way to facilitate time theft. By marketing its clocks in this manner, Lathem obtains a competitive advantage over other time clock companies and secures profits from its use of biometric data, all while failing to comply with the minimum requirements for handling employees' biometric data established by BIPA.

33.     The Pay by Touch bankruptcy, which triggered the passage of BIPA, highlights why such conduct – where individuals are aware that they are providing a fingerprint but are not aware to whom or for what purposes they are doing so – is dangerous. This bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric data such as facial geometry data derived therefrom, who exactly is collecting

8

their biometric data, where it will be transmitted, for what purposes it will be transmitted, and for how long.

34.     Remarkably, Defendant has created the same situation that Pay by Touch did by assembling a database of biometric data through broadly deployed facial recognition scanners, but failed to comply with the law specifically designed to protect individuals whose biometrics are collected in these circumstances. Defendant disregards these obligations and Illinois employees' statutory rights and instead unlawfully collects, stores, uses, and disseminates employees' biometric identifiers and information without ever receiving the individual's informed written consent required by BIPA.

35.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

36.     Since Defendant neither publishes a BIPA-mandated data-retention policy nor discloses the purposes for its collection and use of biometric data, Plaintiff and others similarly situated have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

37.     By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Bret Bray's Experience.**

38.    Plaintiff Bret Bray was hired by Hixon Lumber Supply located in Hillsboro, Illinois in January 2019 and worked there until March 2019.

39.    As a condition of employment with Hixon, Bray was required to scan his facial geometry using a Lathem device so his employer could track his time.

40.    Lathem subsequently stored Bray's facial biometric data in its database(s).

41.    Bray was required to scan his facial geometry on a Lathem device each time he clocked in for work and clocked out of work.

42.    Bray has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used, and/or disseminated his biometric data.

43.    Bray has never been informed of any biometric data retention policy developed by Defendant, nor has he ever been informed whether Defendant will ever permanently delete his biometric data.

44.    Bray has never been provided with nor ever signed a written release allowing Defendant to collect, store, use or disseminate his biometric data.

45.    Bray has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

46.    No amount of time or money can compensate Bray if his biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics. Moreover, Bray would not have provided his biometric data to Defendant if he had known that Defendant would retain such information for an indefinite period of time without his consent.

10

47.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Bray has been aggrieved because he suffered an injury-in-fact based on Defendant's violations of his legal rights. Defendant intentionally interfered with Bray's right to control his own sensitive biometric data. Additionally, Bray suffered an invasion of a legally protected interest when Defendant secured his personal and private biometric data at a time when it had no right to do so, a gross invasion of his right to privacy. BIPA protects employees like Bray from this precise conduct.

48.     Pursuant to 740 ILCS 14/15(b), Bray was entitled to receive certain information prior to Defendant securing his biometric data; namely, information advising him of the specific limited purpose(s) and length of time for which Defendant to collect, store, use and disseminate his private biometric data; information regarding Defendant's biometric retention policy; and, a written release allowing Defendant to collect, store, use, and disseminate his private biometric data.

49.     Bray has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of his biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of interference with his right to control his confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

50.     As Bray is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

51.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

52.     As discussed supra, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

53.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801 for the following class of similarly-situated employees under BIPA:

> All individuals working in the State of Illinois who had their facial geometry collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.

54.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

    A.     The class is so numerous that joinder of all members is impracticable;

    B.     There are questions of law or fact that are common to the class;

12

C.      The claims of Plaintiff are typical of the claims of the class; and,

D.      Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

55.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Lathem' records.

## Commonality

56.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.      Whether Defendant collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.      Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing his biometric identifiers or biometric information;

C.      Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.      Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.      Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.      Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

13

G. Whether Defendant complies with any such written policy (if one exists);

H. Whether Defendant used Plaintiff's facial biometrics to identify him;

I. Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J. Whether the violations of BIPA were committed negligently; and

K. Whether the violations of BIPA were committed intentionally and/or recklessly.

57. Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## Adequacy

58. Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

59. The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

60. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

## Predominance and Superiority

61. The common questions identified above predominate over any individual issues,

which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

62. Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly Available Retention Schedule**

63. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the

company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

65.     Defendant fails to comply with these BIPA mandates.

66.     Defendant Lathem is a Georgia corporation that conducts business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

67.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry), as explained in detail in Sections II and III, supra. *See* 740 ILCS § 14/10.

68.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

69.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

70.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

71.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the

alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

72.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.    BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject...in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information..." 740 ILCS 14/15(b) (emphasis added).

74.    Defendant fails to comply with these BIPA mandates.

75.    Defendant Lathem is a Georgia corporation that conducts business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

76.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry), as explained in detail in Sections II and III, supra. *See* 740 ILCS § 14/10.

77.    Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

17

78. Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

79. Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

80. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, et seq.

81. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

82. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

84.     Defendant fails to comply with this BIPA mandate.

85.     Defendant Lathem is a Georgia corporation that conducts business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

86.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their facial geometry), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

87.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

88.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

89.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

90.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the

alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### PRAYER FOR RELIEF

Wherefore, Plaintiff Bret Bray respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bret Bray as Class Representative, and appointing Stephan Zouras, LLP as Class Counsel;

B. Declaring that Defendant's actions, as set forth above, violate BIPA;

C. Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D. Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E. Declaring that Defendant's actions, as set forth above, were negligent;

F. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

G. Awarding Plaintiff and the Class his reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

H. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

I. Provide such further relief as the Court deems just and equitable.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: April 18, 2019

Respectfully Submitted,

*/s/ Haley R. Jenkins*
Ryan F. Stephan
Haley R. Jenkins
**STEPHAN ZOURAS, LLP.**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

Brandon M. Wise
**PEIFFER WOLF CARR & KANE,
APLC.**
818 Lafayette Avenue,
Floor 2
St. Louis, MO 63104
T (314) 833-4826
bwise@pwcklegal.com

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 18, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Haley R. Jenkins*

**(d) Summons Requiring Appearance Within 30 Days After Service.**

In the Circuit Court of the ____4th____ Judicial Circuit, Montgomery County, Illinois
(Or, In the Circuit Court of Cook County, Illinois)

Bret Bray, et al.                          )
                                           )
   Plaintiffs,              )
v.                                         )       No. 2019L8
Lathem Time, Co.                           )
                                           )
   Defendants.              )                     Lathem Time Corporation
                                                                 200 Galleria Pkwy, Suite 330
                      ALIAS SUMMONS              Atlanta, GA 30339

To each defendant:

You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

Witness    **5/8/2019**

(Seal of Court)

SEAL

Clerk of Court

-6-

Plaintiff's Attorney (or plaintiff, if he is not represented by attorney)
Haley R. Jenkins (STEPHAN ZOURAS, LLP.)

Address 100 N. Riverside Plaza, Suite 2150, Chicago, IL 60606
Telephone No. 312-233-1550
Facsimile Telephone No. 312-233-1560
E-mail Address hjenkins@stephanzouras.com

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

Date of service _____, 20___ (to be inserted by officer on copy left with defendant or other person).