IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRET BRAY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-3157 |
| LATHEM TIME CO., | ) ) | |
| Defendant. | ) ) | |

OPINION

RICHARD MILLS, United States District Judge:

This is an action for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA").

Defendant moves to dismiss for failure to state a claim and to join necessary parties and to dismiss for lack of personal jurisdiction.

I.    BACKGROUND

Defendant Lathem Time Corp. ("Lathem") designs and sells biometric-based timekeeping systems to employers to track time worked by hourly employees. Plaintiff Bret Bray alleges that his former employer, Hixson Lumber Sales of Illinois, Inc. ("Hixson"), required him to use Lathem facial-recognition technology on a timekeeping device (a "Lathem Device") and that Lathem violated BIPA by

1

collecting, storing, using, and/or disclosing his biometric information without giving the notices and obtaining the consents required by the statute. Bray filed a proposed class action complaint in the Circuit Court for the Fourth Judicial Circuit, Montgomery County, Illinois, seeking to pursue those claims for himself and on behalf of any individual working in Illinois who supposedly had their facial geometries collected, captured, received, obtained, maintained, stored or disclosed by Lathem, regardless of where they worked.

On June 18, 2019, Lathem removed the action to this Court.

Bray alleges Lathem designs and sells biometric timekeeping systems to employers throughout Illinois to track time worked by hourly employees. Because employees clocking in or out must use biometrics—like their facial geometry—this technology eliminates the possibility of "buddy punching" that could occur if a traditional punch card were used. It is not possible to "borrow" facial geometry to clock in for a friend.

BIPA requires collectors of biometric data to inform the subject in writing that biometric data is being collected or stored and receive that person's written consent. *See* 740 ILCS 14/15(b). If the collector discloses the data, it must generally—absent some exceptions not present here—receive consent for that as well. *See* 740 ILCS 14/15(d). Additionally, any entity in possession of biometric

2

data must create a publicly accessible policy regarding the retention and destruction of such data. *See* 740 ILCS 14/15(a).

Bray contends Lathem violated each of those provisions. As an employee from whom Lathem collected facial geometry while ignoring his rights under BIPA, therefore, Bray brings this suit to enforce the statute on his own behalf and on behalf of a class of Illinois citizens whose rights Lathem is alleged to have violated in this way.

Lathem claims BIPA was not designed to apply to third-party technology vendors like itself. Although BIPA may give Bray a cause of action against his employer, Hixson—which he is pursuing in a separate action in state court—it does not give him a claim against Lathem. Lathem contends he is attempting to assert a claim that does not exist. Bray alleges that Lathem collected his data and held it without obtaining his consent. Moreover, Lathem did not establish a retention policy. Bray further contends that BIPA applies to all "private entities" which would include Lathem. Thus, Bray asserts he has alleged a viable claim.

Lathem further alleges that, even if Bray could state a claim, the claim should still be dismissed for failure to join numerous necessary parties: the employers of the putative class members. Bray contends this portion of the motion is premature, as there is not sufficient information to determine the necessity of any additional parties under Federal Rule of Civil Procedure 19.

Lathem further asserts it is a Georgia-based seller of workplace timekeeping devices and software services with *de minimis* connections to Illinois. Because of these limited contacts with Illinois and because its suit-related contact is a result of the actions of third parties like Hixson, Lathem claims the action should be dismissed for lack of personal jurisdiction. Bray contends Lathem's business relationships with Illinois citizens, from which his injuries arose, subject it to jurisdiction in Illinois.

## II. DISCUSSION

The Court will first consider Lathem's motion to dismiss for lack of personal jurisdiction because if there is no *in personam* jurisdiction, the Court cannot address the other motion. *See be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) (noting that the entry of a judgment when the court lacks personal jurisdiction over the defendant is void).

### (A)

In considering a motion to dismiss under Rule 12(b)(2), the Court accepts the Plaintiff's allegations concerning personal jurisdiction unless the allegations are refuted through undisputed affidavits. *See Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011).

Federal courts sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if the forum-state court would have such jurisdiction. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2012). "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Under the Constitution, the inquiry is whether it is "fair and reasonable" to require the nonresident defendant to answer the plaintiff's claim; the entity must have contacts or ties with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). A defendant must purposefully avail itself of the privilege of conducting activities within a state, thereby invoking the protection of its laws. *See Burger King Co. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). The contacts must create a "substantial connection" with the state and not be the result of "random," "fortuitous" or "attenuated" contacts. *Id*. at 475.

The plaintiff cannot be the sole link between a defendant and the forum. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). While "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff

or other parties," its "relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286.

(B)

The issue is whether Illinois has specific jurisdiction over Lathem. In order for there to be specific jurisdiction, "the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state." *Lexington Insurance Company v. Hotai Insurance Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (internal quotation marks omitted). Next, "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities." *Id*. Additionally, "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id*.

The Seventh Circuit has cautioned that courts "should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates [an interactive] website that is accessible in the forum state." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (citations omitted). The minimum-contacts

analysis "center on the relations among the defendant, the forum, and the litigation." *Id*. In order for there to be personal jurisdiction, the defendants must have targeted the forum state. *See id*. Lathem's "suit related conduct must create a substantial connection with the forum State" in order for there to be personal jurisdiction. *See Walden*, 571 U.S. at 284.

In support of its motion to dismiss for lack of personal jurisdiction, Lathem has submitted the Declaration of Lance Whipple, its Vice President, Sales & Marketing. When a defendant submits evidence disputing a court's exercise of personal jurisdiction, the plaintiff must provide evidence supporting the court's exercise of jurisdiction. *See Matlin*, 921 F.3d at 705.

Lathem contends it does not have sufficient contacts with Illinois to justify the exercise of specific jurisdiction. Moreover, Lathem alleges its sales and interactive website are irrelevant to the jurisdictional analysis.

According to Mr. Whipple's Declaration, Lathem has no offices or facilities in Illinois. It is not registered to do business in Illinois and has no Illinois employees. Lathem has no real estate, accounts, other personal property or physical presence of any kind in Illinois. Lathem does not interact with its customers' employees, such as Bray or any putative class members. Its relationship is solely with the employers.

Lathem alleges it does not target Illinois customers or their employees in any way. Mr. Whipple states Lathem does not advertise in Illinois, send sales or other representatives here, maintain any sales or marketing programs for Illinois customers, or geographically restrict the sales of its products and services. Lathem's suit-related "contact" is limited to offering an optional web-service, PayClock Online, that is available to customers in Illinois. "If the defendant merely operates a website, even a "highly interactive" website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC*, 642 F.3d at 559.

Lathem notes it did not itself create any contact with Illinois. It is the result of decisions by employers to (1) use Lathem Devices in the state, (2) enable the facial-recognition feature, and (3) enroll in PayClock Online. The absence of any one of these decisions by the employers would break the chain of events that led to suit-related contact with Illinois. As Mr. Whipple states, Lathem did not even sell the Lathem Device to Bray's employer, Hixson Illinois; instead it sold and shipped them to Hixson Lumber Sales in Arkansas. Whipple notes that customers can move and use the devices as they see fit, including across state lines. Accordingly, Lathem had nothing to do with how the devices got to Illinois. As Lathem alleges, its contact with Bray is purely happenstance and the result of the actions of third parties. Such "random," "fortuitous" or "attenuated" contacts—which is based solely on the

actions of another entity—cannot support specific jurisdiction. *See Burger King*, 471 U.S. at 475.

Bray claims that Lathem could reasonably foresee that its products and services would be purchased and used in Illinois. Citing *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), Bray contends that Lathem's business appears to include an expansive and sophisticated online venture and, when an entity holds itself out to conduct business nationwide and is successful in reaching nationwide customers, personal jurisdiction exists. *See id*. at 760. In *Hemi Group*, the Seventh Circuit found significant that the online seller expressly stated that it would do business with 49 states by saying it would ship to any state in the country except New York. *See id*. at 758 ("Although listing all forty-nine states by name would have made a stronger case for jurisdiction in this case, inasmuch as it would have expressly stated that Hemi wanted to do business with Illinois residents, the net result is the same."). Mr. Whipple states that Lathem imposes no such limitation on its sales. Additionally, the issue in *Hemi Group* concerned the defendant's failure to pay sales tax, *see* 622 F.3d at 756, so the sale itself was a suit-related contact. This lawsuit concerns Lathem's alleged collection, storage use and disclosure of biometrics--not Lathem's sales.

Bray cites *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) for the proposition that the Seventh Circuit found that personal jurisdiction existed

9

based on Internet-based activities. The defendant in that case had aired many national commercials, including six straight years of Super Bowl ads. *See id*. at 427. Its advertising activities included celebrity and sports sponsorships which successfully reached Illinois customers. *See id*. Lathem has not targeted Illinois in a remotely similar manner. Accordingly, *uBid* is inapposite.

Bray also relies on *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010), wherein the Seventh Circuit states that "[a] defendant's deliberate and continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, can be sufficient to establish specific personal jurisdiction." *Id*. at 446. In this case, however, there are no contacts with the state other than the website and that alone is not enough. *See id*. ("A plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website.").

Bray also relies on *Norberg v. Shutterfly, Inc.*, 152 F. Supp.3d 1103 (N.D. Ill. 2015), wherein the plaintiff also asserts a violation of BIPA. Judge Norgle noted that defendants in *Norberg* operated multiple websites that provided digital photo storage, sharing, and photo prints and novelty gifts, such as photo mugs and mousepads, which was available in all 50 states and internationally. *See id*. at 1105.

The photo sharing and printing services were offered directly to Illinois citizens, while hard copy photographs and other products were shipped directly to their customers. *See id.* The alleged statutory violation stemmed out of the defendants' contact with Illinois residents. *See id.* Accordingly, the court denied the defendants' motion to dismiss for lack of personal jurisdiction. *See id.* This case is distinguishable because Lathem's only "contact" with Illinois occurs when its customers—employers, not end users—reach out to purchase its products and services. Bray's and the putative class members' injury stems not from that contact but from the employers' subsequent use of Lathem Devices, which take place wherever and in whatever manner the employers choose. Accordingly, the injury here does not stem from Lathem's Illinois contacts and does not establish specific jurisdiction.

The Court concludes Bray has failed to rebut Lathem's evidence demonstrating the lack of personal jurisdiction. Lance Whipple's Declaration noted that Lathem is incorporated and headquartered in Georgia; does not have any real estate, accounts, personal property, employees, or physical presence in Illinois; does not target Illinois or purposely directly sales into the state through advertising and marketing or the use of sales or service representatives; and did not even sell a Lathem Device to Bray's employer in Illinois. Because Bray has not refuted Mr. Whipple's statements, the Court accepts those statements as true. *See GCIU-*

*Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) ("[W]e accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff.").

Based on the random and attenuated nature of Lathem's contacts with Illinois—and the lack of any suit-related contact--the Court concludes that personal jurisdiction over Lathem would not comport with traditional notions of fair play and substantial justice. Accordingly, Lathem does not have sufficient contacts with Illinois to warrant the exercise of specific jurisdiction.

<u>Ergo</u>, the motion of Defendant Lathem Time Corp to dismiss for lack of personal jurisdiction [d/e 14] is GRANTED.

The Clerk will terminate the Defendant's motion to dismiss for failure to state a claim [d/e 9].

The Clerk will enter Judgment and terminate this case.

ENTER: March 26, 2020

                          FOR THE COURT:

                                 /s/ *Richard Mills*
                                 Richard Mills
                                 United States District Judge